## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**VERNON L. ORANGE, SR.**                    **CIVIL ACTION**

**VERSUS**                                   **NO.  06-10761**

**BURL CAIN, WARDEN**                        **SECTION "R"(4)**

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an Evidentiary Hearing if necessary, and to submit Proposed Findings and Recommendations pursuant to **Title 28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.  *See* 28 U.S.C. § 2254(e)(2).[1]

### I.      Factual and Background

The petitioner, Vernon L. Orange, Sr. ("Orange"), is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On April 23, 1996, Orange was charged by Bill of Information in St. Tammany Parish with armed robbery.[3]

---

[1]Under Title 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 6, Bill of Information, 4/23/96.

The record reflects that, on or about March 21, 1996, around 5:00 a.m., Orange entered an EZ Serve convenience store in Slidell, Louisiana.[4]  Orange walked up to the counter and demanded from the clerk, Tara Pays, the money in the cash register.  Pays thought it was a joke because of Orange's low, calm voice.  Orange then threatened to "come around and jug it" out of her.  Orange was carrying a small folding knife with a black plastic handle with a diamond patterned grip.  Pays immediately opened the cash register and gave Orange the money.  She offered him the food stamps and change in the drawer but he refused them.  He was later arrested and charged with armed robbery.

At the request of Orange's counsel, the Trial Court appointed a sanity commission and held a hearing on October 29, 1996.[5]  Based on the reports and the testimony, the Court found Orange to be competent to proceed and assist his counsel.  Orange later entered a plea of not guilty and not guilty by reason of insanity.[6]

On August 25, 1997, the matter was called for jury trial and a jury was selected.[7]  During trial, on August 26, 1997, Orange entered a plea of guilty as charged.[8]  After waiver of delays, the Trial Court sentenced Orange to serve 40 years in prison.

---

[4]The facts of the case were taken from the opinion of the Louisiana First Circuit Court of Appeal on appeal after resentencing.  St. Rec. Vol. 6 of 6, 1st Cir. Opinion, 2003-KA-2172, pp. 3-4, 5/15/04; *State v. Orange*, 874 So.2d 432 (La. App. 1st Cir. 2004) (Table).

[5]St. Rec. Vol. 1 of 6, Minutes of Lunacy Hearing, 10/29/96.

[6]St. Rec. Vol. 1 of 6, Minute Entry, 5/12/97.

[7]St. Rec. Vol. 1 of 6, Trial Minutes (2 pages), 8/25/97.

[8]St. Rec. Vol. 1 of 6, Guilty Plea Minutes, 8/26/97; Transcript of Guilty Plea, 8/26/97.

Three years later, on July 27, 2000, Orange filed an application for post conviction relief in which he raised two grounds for relief:[9] (1) the Trial Court erred in finding him competent without a hearing to determine whether he was competent at the time of the crime or whether he was capable of assisting counsel with his defense; and (2) ineffective assistance of counsel for failure to object regarding a hearing on competency.

Counsel later enrolled on behalf of Orange and the Trial Court held a hearing on the application on February 8, 2001.[10]  At the hearing, the Court allowed Orange to withdraw his prior plea of guilty.[11]

The Trial Court held a lunacy hearing on April 23, 2001.[12]  The Court found Orange competent to stand trial and directed that he remain on psychiatric medication.[13]  The Court later granted a joint motion to have Orange medicated for trial and the psychiatric evaluation was filed into the record.[14]

On July 27, 2001, the Trial Court heard counsel's motions to suppress the confession and the identification evidence.[15]  The Trial Court denied the motion to suppress the identification

---

[9]St. Rec. Vol. 1 of 6, Uniform Application for Post Conviction Relief, 7/27/00.

[10]St. Rec. Vol. 1 of 6, Motion to Enroll as Counsel of Record, 1/24/01; Trial Court Order, 1/30/01; Motion to Enroll as Counsel of Record, 2/1/01; Trial Court Order, 2/15/01; Order for Evidentiary Hearing, 12/5/00; Hearing Minutes, 2/8/01.

[11]St. Rec. Vol. 1 of 6, Hearing Minutes, 2/8/01.

[12]St. Rec. Vol. 1 of 6, Motion and Order for Lunacy, 3/5/01; Lunacy Hearing Minutes, 4/23/01.

[13]St. Rec. Vol. 1 of 6, Lunacy Hearing Minutes, 4/23/01.

[14]St. Rec. Vol. 1 of 6, Joint Motion and Order to Medicate Defendant for Trial, 5/22/01; Hearing Minutes, 5/23/01; Trial Court Order, 5/23/01; Sanity Evaluation, 6/1/01.

[15]St. Rec. Vol. 1 of 6, Hearing Minutes, 7/27/01.

testimony.  On August 2, 2001, the Trial Court granted the motion to suppress the confession.[16]  The Court also denied Orange's *pro se* motion to quash the proceedings based on double jeopardy because the motion was not filed by his counsel.[17]

On August 13, 16, and 17, 2001, Orange was tried before a jury, and was found guilty as charged.[18]  At a hearing held November 15, 2001, the Trial Court denied Orange's Motion in Arrest of Judgment based on double jeopardy and the Motion for a New Trial.[19]  The Court thereafter sentenced Orange on November 15, 2001, to serve 40 years in prison.[20]

The Court also took up the matter of the multiple bill, which was filed by the State on October 31, 2001.[21]  After hearing the evidence, the Court found Orange to be a third offender and sentenced him to serve life in prison without benefit of parole, probation, or suspension of sentence.[22]

---

[16]St. Rec. Vol. 1 of 6, Minute Entry, 8/2/01.

[17]St. Rec. Vol. 1 of 6, Motion to Quash, 7/31/01; Trial Court Order, 8/3/01.

[18]St. Rec. Vol. 1 of 6, Trial Minutes (3 pages), 8/13/01; Trial Minutes (3 pages), 8/16/01; Trial Minutes (2 pages), 8/17/01; Jury Verdict, 8/17/01.

[19]St. Rec. Vol. 1 of 6, Motion in Arrest of Judgment, 10/2/01; Motion for A New Trial, 10/2/01; Sentencing Minutes, 11/15/01.

[20]St. Rec. Vol. 1 of 6, Sentencing Minutes, 11/15/01.

[21]*Id.*; St. Rec. Vol. 1 of 6, Multiple Bill, 10/31/01.

[22]St. Rec. Vol. 1 of 6, Sentencing Minutes, 11/15/01.

At the hearing, the Court also denied counsel's oral motion to reconsider the sentence.[23]  On November 21, 2001, counsel filed a written motion to reconsider the sentence, which the Court denied on November 29, 2001.[24]

On direct appeal, counsel raised three grounds for relief and Orange, *pro se*, raised three grounds for relief:[25] (1) by counsel and Orange, the Trial Court erred in failing to hold a competency hearing on the issue of Orange's medication and his ability to assist in his defense; (2) by counsel, the Trial Court erred in imposing a sentence as a habitual offender which was greater than the sentence imposed after the original guilty plea without a multiple bill; (3) by Orange, the Trial Court erred in denying the motion to obtain funds for an independent psychiatric examination regarding Orange's insanity at the time of the commission of the crime; (4) by Orange, vindictive prosecution and sentence because his bond was increased prior to trial, the Trial Court did not hold a hearing on his medication, the Trial Court denied the request for a state appointed expert to assist with the defense, and the Trial Court failed to consider his mental condition as a mitigating factor when imposing the life sentence; and (5) by counsel, the Trial Court erred in applying the habitual offender laws in place at the time of the crime rather than those in place at the time of conviction.

On April 11, 2003, the Louisiana First Circuit Court of Appeal affirmed the conviction and the habitual offender adjudication and remanded the case for resentencing.[26]  The Court found no merit to the first four claims listed above.  However, the Court determined that the Trial Court erred

---

[23]*Id.*

[24]St. Rec. Vol. 1 of 6, Motion to Reconsider Sentence, 11/21/01; Trial Court Order, 11/29/01.

[25]*State v. Orange*, 845 So. 2d 570 (La. App. 1st Cir. 2003); St. Rec. Vol. 5 of 6, 1st Cir. Opinion, 2002-KA-0711, 4/11/03.

[26]*Id.*

in applying the habitual offender laws in determining the sentence.  The Court vacated the sentence and remanded for resentencing.

On May 12, 2003, counsel filed a writ application with the Louisiana Supreme Court challenging the ruling on direct appeal.[27]  Two weeks later, on May 28, 2003, the Trial Court resentenced Orange as a third offender to serve 75 years in prison without benefit of parole, probation, or suspension of sentence.[28]  The Court subsequently denied counsel's motion to reconsider the sentence and for new trial.[29]  Both counsel and Orange filed motions for appeal of the sentence.[30]  Orange thereafter submitted an untimely writ application to the Louisiana Supreme Court challenging the ruling on direct appeal.[31]

In the second appeal, Orange raised three grounds for relief:[32] (1) the sentence was excessive because there was no mitigation for Orange's mental condition; (2) the Trial Court erred when it failed to vacate the original sentence; and (3) Orange was not advised at the resentencing of the delays for filing for post conviction relief.  On May 14, 2004, the Louisiana First Circuit affirmed the sentence and remanded only for the Trial Court to give Orange notice of the post conviction

---

[27]St. Rec. Vol. 5 of 6, La. S.Ct. Letter, 2003-K-1352, 5/13/03 (writ filed by hand 5/12/03).

[28]St. Rec. Vol. 5 of 6, Sentencing Minutes, 5/28/03; Sentencing Transcript, 5/28/03.

[29]St. Rec. Vol. 5 of 6, Motion to Reconsider Sentence, 5/30/03; Trial Court Order, 6/6/03.

[30]St. Rec. Vol. 5 of 6, Motion for Appeal, 5/30/02 (by counsel); Notice of Intent to Appeal, 6/2/03 (by Orange).

[31]St. Rec. Vol. 6 of 6, La. S.Ct. Letter, 2003-KH-2195, 8/4/03 (writ postmarked 7/9/03, filed 8/1/03).  La. S.Ct. R. X§5(a) provides that an application seeking review of the judgment of the court of appeal shall be filed or postmarked within 30 days of the issuance of the judgment.  *See also* La. Code Crim. Proc. art. 922(A).  Orange's *pro se* petition was not submitted within that time period.

[32]St. Rec. Vol. 6 of 6, 1st Cir. Opinion, 2003-KA-2172, pp. 3-4, 5/15/04.

filing delays.[33]  The Trial Court complied with that directive on May 17, 2004.[34]  Orange did not seek further review of this appeal.

Shortly thereafter, on May 21, 2004, the Louisiana Supreme Court denied without reasons the writ application filed by counsel after the issuance of the first opinion on direct appeal.[35]  On July 2, 2004, the Court also denied without reasons the untimely writ application filed *pro se* by Orange after the first opinion on direct appeal.[36]

Orange's conviction became final 90 days after the Court's May 21, 2004, denial of counsel's writ application,[37] or on August 19, 2004, because he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under Title 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

## II.   **Procedural Background**

On February 11, 2005, Orange filed a Uniform Application for Post Conviction Relief raising two grounds for relief:[38] (1) ineffective assistance of counsel for allowing him to be tried without

---

[33]*Id.*; *State v. Orange*, 874 So.2d at 432.

[34]St. Rec. Vol. 6 of 6, Notice of Prescriptive Period for Filing Post Conviction Relief Application, 5/17/04; *see also*, Letter from Clerk of Court, 5/24/04.

[35]*State v. Orange*, 874 So.2d 161 (La. 2004); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2003-K-1352, 5/21/04.

[36]*State ex rel. Orange v. State*, 877 So.2d 137 (La. 2004); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2003-K-2195, 7/21/04.

[37]The May 21, 2004, Order from the Louisiana Supreme Court is used in determining finality.  The subsequent Order issued July 2, 2004, was related to Orange's untimely filed writ application.  A late filed Louisiana Supreme Court writ application does not act to continue the direct appeal process and therefore does not bear on the finality of a conviction.  *Butler v. Cain*, __ F.3d __, 2008 WL 2514644 at *2 (5th Cir. Jun. 25, 2008).

[38]St. Rec. Vol. 6 of 6, Uniform Application for Post Conviction Relief, 2/11/05 (signed 2/7/05).

clarification of his competence and for failure to protect his constitutional rights; and (2) ineffective assistance of counsel for failure to secure an independent psychiatric expert to assist in the defense.

The Trial Court dismissed the application on February 28, 2005, citing La. Code Crim. P. art. 930.4.[39]  Orange's subsequent writ application in the Louisiana First Circuit was denied on June 17, 2005, because of Orange's failure to comply with the procedural requirements for filing.[40]

In the meantime, on June 2, 2005, Orange filed a supplement to his application for post conviction in the Trial Court in which he alleged ineffective assistance of counsel for continuing to trial after the court erred in overruling the defense objection for cause to a prospective juror and for not raising the issue on appeal.  The Trial Court construed the pleading as a second application and, on June 24, 2005, dismissed the application, citing La. Code Crim. P. art. 930.4.

On July 12, 2005, Orange filed another writ application with the Louisiana First Circuit, which the Court denied without reasons on October 6, 2005.[41]  The Louisiana Supreme Court, on September 15, 2006, denied without reasons the subsequent writ application filed in that Court.[42]

---

[39]La. Code Crim. P. art. 930.4 provides for the dismissal of a post conviction application if it: (A) raises claims fully litigated on appeal; (B) raises a claim which should have been raised pretrial or during trial; (C) raises a claim which should have been raised on appeal; (D) the application is a successive application which raises claims which are not new or different; or (E) the application is a successive application which raises new or different claims which should have been raised in a previous application.

[40]The State failed to provide a copy of this writ application.  The filing date has been confirmed with the clerk of court for the Louisiana First Circuit Court of Appeal.  St. Rec. Vol. 6 of 6, 1st Cir. Order, 2005-KW-0699, 6/17/05.

[41]Again, the State failed to provide a copy of this writ application.  The filing date has been confirmed with the clerk of court for the Louisiana First Circuit Court of Appeal.  St. Rec. Vol. 6 of 6, 1st Cir. Order, 2005-KW-1551, 10/6/05.

[42]*State ex rel. Orange v. State*, 937 So.2d 373 (La. 2006); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2006-KH-0547, 9/15/06; La. S. Ct. Letter, 2006-KH-547, 3/9/06 (writ postmarked 11/3/05).

### III.    __Federal Petition__

On December 1, 2006, Orange filed a petition for federal habeas corpus relief raising four grounds for relief:[43] (1) the Trial Court erred in failing to hold a contradictory hearing on the issue of competency to proceed, ability to consult with counsel, and to assist in preparation and participation in the defense; (2) the Trial Court erred in denying the defense motion to obtain funds for an independent psychiatric examination regarding the issue of his sanity at the time of the commission of the crime; (3) the Trial Court erred in becoming a non-impartial arbiter and was biased against and prejudicial to him resulting in a vindictive prosecution and sentence demonstrated by the fact that there was no decrease in bond, he was forced to trial after prison officials changed his medication, and the defense renewed the motion for a sanity commission; and (4) ineffective assistance of counsel (a) for allowing him to be tried without clarification of his competence and failing to utilize substantive protections, (b) for failure to secure the assistance of an independent psychiatric expert to conduct examination and assist in the case, and (c) for proceeding to trial after the court erred in not granting the defense objection for cause to a prospective juror and for not raising the issue on appeal.

The State filed a response in opposition to Orange's petition conceding exhaustion and timeliness of the complaint.[44]  The State argues that Orange's claims are without merit, referring mainly to the state court opinions on the issues raised and without addressing the federal standard

---

[43]Rec. Doc. No. 1.

[44]Rec. Doc. No. 7.

on habeas corpus review.[45]  Orange filed a reply to the opposition restating his arguments in support

of the claims raised.[46]

## IV.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-

132, 110 Stat. 1214,[47] applies to Orange's petition, which is deemed filed in this court under the

federal "mailbox rule" on October 17, 2006.[48]  The threshold questions in habeas review under the

amended statute are whether the petition is timely and whether the claim raised by the petitioner was

adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies

and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th

Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

As noted above, the State has addressed the merits of the claims raised by Orange.  In doing

so, the State failed to address or cite to the federal standards of review relevant to review of habeas

---

[45]The State also failed to provide copies of the Louisiana First Circuit and the Louisiana Supreme Court records
from the direct appeals and post conviction proceedings.  The State was ordered to provide these records.  *See* Rec. Doc.
No. 2.  The Court has, however, confirmed the record presented is adequate to address Orange's claims.

[46]Rec. Doc. No. 8.

[47]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and
applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th
Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify
an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become
effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[48]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions
filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*.  Under this rule, the
date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing
for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378
(5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Orange's federal habeas
petition on December 1, 2006, when the filing fee was paid.  Orange dated his signature on the petition on October 17,
2006.  This is the earliest date on which he could have delivered it to prison officials for mailing.  The fact that he paid
the filing fee on a later date does not alter the application of the federal mailbox rule to his *pro se* petition.  *See Cousin
v. Lensing*, 310 F.3d 843, 843 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time
of mailing) (citing *Spotville*, 149 F.3d at 374).

corpus petitions.  As such, the State has overlooked the obvious procedural denial of Orange's ineffective assistance of counsel claim.  The record reflects that Orange's ineffective assistance of counsel was dismissed by the Trial Court, as acquiesced to by the higher state courts, on procedural grounds pursuant to La. Code Crim. P. art. 930.4.

The United States Fifth Circuit Court of Appeals has stressed that a federal habeas court must determine as a threshold matter whether procedural default has occurred on any asserted claim. *Nobles*, 127 F.3d at 420.  This court has discretion to raise procedural default *sua sponte*, provided that the petitioner has notice that the issue is being considered.  *Fisher v. State*, 169 F.3d 295, 301 (5th Cir. 1999); *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998).

The record reflects that the State's failure to raise this was the result of its inadvertence and apparent unfamiliarity with federal standards of habeas corpus review.  *See Prieto v. Quaterman*, 456 F.3d 511 (5th Cir. 2006) (*citing Magouirk*, 144 F.3d at 360).  Accordingly, **petitioner is hereby specifically advised and instructed that this report and recommendation is notice to him that this court is** *sua sponte* **raising the issue of procedural default and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report.**  *Magouirk*, 144 F.3d at 350, 360.  The Court therefore will address the procedural bar *sua sponte*.

## V.      Procedural Default (Ineffective Assistance of Counsel, Claim No. 4(c))

Orange raised the ineffective assistance of trial counsel in his two applications for post conviction relief in Trial Court.  The Trial Court dismissed both petitions citing only to La. Code Crim. P. art. 930.4. This procedural denial was the last reasoned decision issued by any state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not

indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).  The ineffective assistance of counsel claims, comprising claim number four in this federal petition, were resolved on state procedural grounds and Orange's procedural default.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment.  *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)).  The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post conviction review.  *Coleman*, 501 U.S. at 731-32.  This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

### A.    Independent State Grounds

A dismissal is independent of federal law when the last state court "clearly and expressly" indicated that its judgment rests on a state procedural bar.  *Amos*, 61 F.3d at 338.  The basis for the dismissal of the ineffective assistance of counsel claims was the state procedural requirements found in La. Code Crim. P. art. 930.4, which provides for the dismissal of a post conviction application if it: (A) raises claims fully litigated on appeal; (B) raises a claim which should have been raised pretrial or during trial; (C) raises a claim which should have been raised on appeal; (D) the

application is a successive application which raises claims which are not new or different; or (E) the application is a successive application which raises new or different claims which should have been raised in a previous application.

This article sets forth the state imposed grounds for dismissal of an application because of its procedural failings under state law. The basis for the Trial Court's dismissal was therefore independent of federal law and relied strictly on state procedural requirements. *Bennett v. Whitley*, 41 F.3d 1581 (5th Cir. 1994) (Art. 930.4); *Washington v. Cain*, 2000 WL 863980 (E.D. La. June 27, 2000) (Art. 930.4); *see also Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

### B. Adequate State Grounds

The question of the adequacy of a state procedural bar is itself a federal question. *Douglas v. Alabama*, 380 U.S. 415, 422 (1965); *Jenkins v. Gramley*, 8 F.3d 505, 507 (7th Cir. 1993). To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Glover*, 128 F.3d at 902 (citing *Amos*, 61 F.3d at 339). A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Id*. This federal habeas court must therefore evaluate the adequacy of each of the rules applied to bar petitioner's claims.

In doing so, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); and citing *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)); *accord Turner v. Johnson*, 46 F. Supp.2d 655, 674 (S.D. Tex. 1999). Rather, a federal court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the

underlying proceeding fundamentally unfair. *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985)); *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)).

In keeping with this rule, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review. *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel. Bradley v. Clark*, 2002 WL 31133094 at *4 n.2 (N.D. Ill. July 18, 2002). For this reason, when state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts need not honor that bar. *Davis v. Johnson*, 2001 WL 611164 at *4 n.10 (N.D. Tex. May 30, 2001); *see also*, *Johnson v. Lensing*, 1999 WL 562728 at *4 (E.D. La. July 28, 1999) (Berrigan, J.) (Art. 930.8 bar was not adequate because it was not properly applied under the circumstances of the case); *Poree v. Cain*, 1999 WL 518843 (E.D. La. July 20, 1999) (Mentz, J.) (Art. 930.8 was not adequate to bar review because it was misapplied). However, where such a basis exists in state law, the bar must stand.

In the instant case, the state trial court did not delineate the specific subpart of La. Code Cr. P. 930.4 on which it relied to deny Orange's application. The Trial Court did indicate, when denying Orange's ineffective assistance of counsel claim arising from the objection for cause issue, that the denial of relief was based on the successive nature of the application. The Trial Court's failure to otherwise expound on its ruling makes it difficult to determine which bar it accepted and/or applied to the other facets of the ineffective assistance of counsel claim. The task of this

Court is therefore to determine which, if any, of the bars are adequate to bar federal review of Orange's claim.

The three facets of Orange's ineffective assistance of counsel claim are (a) that counsel allowed him to be tried without clarification of his competency and failed to protect his constitutional rights, (b) that counsel failed to secure the assistance of an independent psychiatric expert to assist in the defense, and (c) that counsel proceeded to trial after the Trial Court erred in overruling a challenge for cause during voir dire and for not raising the issue on appeal.

The first two facets of this claim were raised in Orange's application for post conviction relief filed February 11, 2005.  The third portion was raised in the supplement thereto, filed June 2, 2005, which was construed to be a second or successive application.  For the following reasons, the Court finds that several of the procedural provisions apply in this case and are therefore adequate to bar review.  However, the adequacy of the provisions of the articles are best addressed by reviewing whether each article could apply to individual claims as set forth below.

La. Code Crim. P. art. 930.4 provides for the dismissal of a post conviction application if it (A) raises claims fully litigated on appeal, (B) raises a claim which should have been raised pretrial or during trial, (C) raises a claim which should have been raised on appeal, or (D) the application is a successive application which raises claims which are not new or different, or (E) the application is a successive application which raises new or different claims which should have been raised in a previous application.

At the outset, La. Code Crim. P. art. 930.4(B) would not be relevant.  Orange could not have been expected to challenge counsel's effectiveness at trial and on appeal at a time before or during trial.  Following is a more in depth consideration of the applicability and adequacy, *vel non*, of Art.

930.4(A), (C), (D), and (E), to bar review of the three facets of Orange's ineffective assistance of counsel claim.

### 1.    Art. 930.4(A)

Art. 930.4(A) stands to prohibit review of an application for post conviction review that raises claims that were raised on direct appeal.  Orange did not raise ineffective assistance of counsel on direct appeal.  The matters forming the basis of the ineffective assistance claim, the lack of a second competency hearing on the medication and the denial of the motion for funding, were raised and denied as meritless on direct appeal.  The issue of counsel effectiveness with respect to those matters was not raised, addressed, or commented upon by the appellate court.  When a claim was not raised on appeal, Art. 930.4(A) could not by its very terms apply.

Even if it had been, Art. 930.4(A) would not necessarily bar federal review of the claims. The prohibition in Art. 930.4(A) only prevents "further" state review and is therefore not a true procedural bar when the claims were addressed on the merits on direct appeal.  *Bennett*, 41 F.3d at 1581. Art. 930.4(A).

Nevertheless, the ineffective assistance of counsel was not raised on direct appeal and Art. 930.4(A) appears to have no application here.

### 2.    Art. 930.4(C)

Art. 930.4(C) prevents post conviction review of a claim that could have been raised on direct appeal and was not.  Orange's original appeal after trial was filed by his trial counsel, James A. Williams.  Counsel did not, and could not be expected to, raise his own alleged ineffectiveness.

The record also shows that Orange raised his own assignments of error on direct appeal. Perhaps he could have raised the challenges to counsel's performance.  However, the Louisiana

courts have consistently held that the issue of ineffective assistance of counsel is a matter more properly raised in an application for post conviction relief in the trial court, which allows an evidentiary hearing to be conducted on the issue. *State v. Watson*, 817 So.2d 81 (La. 2002); *State v. Truitt*, 500 So.2d 355, 359 (La.1987). The Louisiana courts consistently refuse to consider such claims on direct appeal deferring them instead to post conviction review. *State v. Smothers*, 836 So.2d 559 (La. App. 5th Cir. 2002); *State v. Hall*, 2003 WL 1546915 (La. App. 4th Cir. Mar. 19, 2003); *State v. Griffin*, 2003 WL 774029 (La. App. 3d Cir. Mar. 5, 2003).

The record does not, therefore, clearly demonstrate that Art. 930.4(C) was adequate in this case as a basis for the dismissal of Orange's ineffective assistance of counsel claims, especially those raised in the first application for post conviction relief. Thus, without an explanation from the Trial Court for the imposition of the bar, the record does not demonstrate or support its adequacy in this case to bar review of Orange's ineffective assistance of counsel claim. The Court will address the merits of those two parts later in this opinion.

### 3. Art. 930.4(D) and (E)

Art. 930.4(D) and (E) prohibit a petitioner from bringing second or successive applications for post conviction relief. These provisions pose a different result for the third facet of Orange's claim. As outlined above, Orange filed his first application for post conviction in the Trial on February 11, 2005. The Trial Court promptly dismissed that application on February 28, 2005.

Four months later, on June 2, 2005, Orange filed a supplement to the original application raising a third facet to his ineffective assistance of counsel claim arising from the failure to challenge the overruling of the cause challenge. The Trial Court construed the pleading to be a second application and dismissed it pursuant to La. Code Crim. P. art. 930.4.

17

Art. 930.4(D) and (E) allow for the dismissal of a second or successive application for post conviction relief. The record demonstrates that Orange was in violation of this premise. His supplemental pleading constituted a second attempt to assert a post conviction claim to the state trial court. The Trial Court refused to consider it finding that it was duplicitous. The provisions of Art. 930.4(D) and (E) are adequate to bar federal review of the third facet of Orange's ineffective assistance of counsel claim (Claim No. 4(c)).

     **C.**     **Cause and Prejudice**

To establish a cause for his procedural default, Orange must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). He has not demonstrated in his pleadings the existence of any objective factor external to the defense that impeded his ability to raise the claims in a proper manner.

Having failed to show an objective cause for his default, the Court need not determine whether prejudice existed and the petitioner not alleged any actual prejudice. *See Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

     **D.**     **Fundamental Miscarriage of Justice**

Alternatively, a petitioner seeking federal habeas review can escape a procedural bar upon a showing that the federal court's failure to review the defaulted claim will result in a fundamental miscarriage of justice. To establish this, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902. "To satisfy the 'factual innocence' standard, a petitioner must establish a fair probability that, considering all of the evidence now

available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt." *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")

Orange has not pointed to any new or existing evidence which would create a reasonable doubt as to his guilt or which would establish his actual innocence. *Murray*, 477 U.S. at 496. Furthermore, the arguments now raised in support of this federal habeas corpus petition were before the state courts and offer no basis for reasonable doubt on habeas corpus review. When the petitioner has not factually established his actual innocence, his procedural default can not be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Because Orange has not met this alternative exception to the procedural bar, his procedurally defaulted third facet of his ineffective assistance of counsel claim (Claim No. 4(c)) must be dismissed with prejudice without review of the merits. The Court, however, will proceed to review of the remaining claims.

## VI.   **Standards of Review on the Merits**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law and mixed questions of fact and law. A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir.

2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides deference to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. A state court's decision can be "contrary to" federal law if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792 (2001).

A state court's decision can involve an "unreasonable application" of federal law if it either (1) correctly identifies the governing rule but then applies it unreasonably to the facts, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See e.g., id.*, at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir.), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision

applied [a Supreme Court case] incorrectly.'"  *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting

*Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the court need not determine

whether the state court's reasoning is sound, rather "the only question for a federal habeas court is

whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230,

246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the

precedent to the facts of his case in an objectively unreasonable manner. *Woodford v. Visciotti*, 537

U.S. 19, 24-25 (2002).

## VII.   Failure to Conduct Competency Hearing (Claim No. 1)

Orange alleges that the state trial court erred in failing to hold a hearing as required by *Pate*

*v. Robinson*, 383 U.S. 375 (1966), to determine his competency to proceed and assist counsel at trial.

Specifically, he alleges that the hearing should have been held after his counsel advised the Trial

Court that his medication, specifically Zoloft, had been altered and/or discontinued by the prison

administration several weeks before trial.

The Trial Court granted a joint motion to confirm the medication prescriptions with direction

that the prison not change the medication prior to trial.  The Trial Court denied defense counsel's

subsequent motion for appointment of another sanity commission to determine the impact of the

changed medication on Orange's behavior and competence.  Orange claims that this period of

altered medication left him unable to properly assist counsel in preparing for trial because he could

not inform counsel about available witnesses and the availability of prior Social Security

Administration records which may have assisted in the defense.

In its opposition, the State argues that no additional competency proceeding was required under the circumstances.  The Court was able to determine that Orange had assisted counsel prior to trial and was able to assist counsel at trial.

This claim was addressed by the Louisiana First Circuit Court of Appeal on direct appeal. The Court held that, under Louisiana law, the ultimate determination of competency rests with the trial court.  The Court also considered that Louisiana law rests on a presumption of sanity which must be refuted by a preponderance of the evidence brought by the defendant to support reasonable grounds to doubt mental competence.  Utilizing the considerations of *Pate*, the Court resolved that the circumstances of Orange's case did not warrant another competency hearing.

The Court determined that, based on counsel's representations to the Trial Court, the medication alteration effected a seven day period, several weeks before trial.  Otherwise, the Court resolved, the record demonstrated that Orange was able to assist counsel at other times prior to trial and counsel conceded that Orange was able to proceed on the day of trial.  The Louisiana Supreme Court denied Orange's subsequent writ application without reasons.  *See Ylst*, 501 U.S. at 802.

The United States Supreme Court considered the issue of whether a trial court should have held further competency proceedings to be a question of fact.  *See Maggio v. Fulford*, 462 U.S. 111, 117 (1983) (addressing a Louisiana trial courts determination that a lunacy commission was not warranted based on the lack of evidence of incompetence).[49]  The precedent in the Fifth Circuit is, however, conflicting as to whether the issue is a question of fact or a mixed question of law and fact. *Patterson v. Robinson*, 69 Fed. Appx. 658, 2003 WL 21355999 at *4 (5th Cir. May 23, 2003) (comparing *Bouchillon v. Collins*, 907 F.2d 589, 593 n. 11 (5th Cir. 1990) (mixed question) and

---

[49]In the concurring and dissenting opinions, Justices White, Brennan, Stevens, and Marshall opined that questions of competency (not hearings on competency) should be addressed as mixed questions of law and fact.

*Washington v. Johnson*, 90 F.3d 945, 951 (5th Cir. 1996) (same) with *Profitt v. Waldron*, 831 F.2d 1245, 1250 (5th Cir. 1987) (jury finding of competency to stand trial is factual finding entitled to presumption of correctness); *Carter v. Johnson*, 131 F.3d 452, 460 (5th Cir.1997) (same)); *see also*, *Miller-El v. Johnson*, 261 F.3d 445, 454 (5th Cir. 2001) (applying AEDPA's "unreasonable application" standard to state court competency determination, but also stating that "[a] state court's competency determination is a finding of fact entitled to a presumption of correctness"), *rev'd on other grounds*, 537 U.S. 322 (2003).

Nevertheless, based on a review of the record, the state courts' adjudication of this claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, and did not result in a decision that was based on an unreasonable determination of the facts.

The Constitution prohibits trial and conviction of a defendant who is mentally incompetent to stand trial. *See Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996); *Pate*, 383 U.S. at 378. The federal courts have long recognized a two part test for ascertaining competence to stand trial: (1) whether the defendant has the "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and (2) "whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960).

Under *Pate*, a trial court must *sua sponte* conduct an inquiry into a defendant's mental capacity if the evidence before it raises a bona fide doubt as to the defendant's competency. *Mathis v. Dretke*, 124 Fed. Appx. 865, 875 (5th Cir. Mar. 11, 2005) (*citing Drope v. Missouri*, 420 U.S. 162 (1975)); *see also Lokos v. Capps*, 625 F.2d 1258 (5th Cir. 1980). To obtain relief on habeas corpus review, the petitioner need not establish that he was incompetent to stand trial to obtain relief, rather

he need only establish that the trial judge should have ordered a hearing to determine his competency.  *See Lokos*, 625 F.2d at 1261.

In considering whether a hearing should have been conducted by a trial court, "[t]he question is: Did the trial judge receive information which, objectively considered, should reasonably have raised a doubt about defendant's competency and alerted him to the possibility that the defendant could neither understand the proceedings or appreciate their significance, nor rationally aid his attorney in his defense[?]"  *Lokos*, 625 F.2d at 1261; *see Medina v. California*, 505 U.S. 437, 448 (1992) (The key is whether the defendant had the capacity to participate in his defense and to understand the proceedings against him).

In this case, the question raised by Orange is whether the state trial court violated the standards set forth in *Pate* when it did not conduct a competency hearing after the change in his medication occurred.  The test to determine whether a *Pate* procedural violation has occurred is an objective one based on what was known to the trial court at the time of the trial.  *Lokos*, 625 F.2d at 1261 (citation omitted).  The United States Supreme Court has <u>not</u> articulated a precise standard for what should indicate a bona fide doubt.  Generally, the Court focuses on three factors which should be considered: (1) the existence of a history of irrational behavior; (2) defendant's demeanor at trial; and (3) a prior medical opinion.  *See Drope*, 420 U.S. at 180.  Even one of these factors, standing alone, may be sufficient to signal a constitutional violation.  *Id*.

The only evidence Orange points to concerning the need for another competency determination were the change in his medication over a seven day period several weeks before trial and the arguments made by his trial counsel concerning changes in Orange's behavior during that seven day period.  First, the statements made by defense counsel about mood changes during that

brief period of time prior to trial are not sufficient to raise a bona fide doubt of competency. *See Pedrero v. Wainwright*, 590 F.2d 1383, 1388 (5th Cir. 1979) (*quoting Jordan v. Wainwright*, 457 F.2d 338, 339 (5th Cir. 1972) (finding defense counsel's "naked suggestion that the defendant may be incompetent" insufficient to warrant a competency hearing)); *accord Davis v. Woodford*, 384 F.3d 628, 645-46 (9th Cir. 2004) (where defendant's behavior was recalcitrant and detrimental to his case, the trial judge did not err in not conducting a competency hearing where the defendant otherwise demonstrated he understood the proceedings and what was at stake). When the motion to reopen Orange's sanity commission was brought, the record before the Trial Court did not indicate a bona fide need for another competency hearing under *Pate* for the following reasons.

As resolved by the state courts, and outlined in this report in the procedural history, the record indicates that Orange was first found competent to stand trial by the sanity commission appointed in 1996, prior to his guilty plea.[50] On post conviction review, Orange complained that the sanity reports did not address his sanity at the time of the crime.[51] He later was allowed to withdraw the guilty plea on that basis and the Trial Court appointed a second sanity commission to re-evaluate his competence to stand trial and to evaluate his sanity at the time of the crime.[52]

At the time of the second round of sanity evaluations and the hearing, Orange was taking an anti-psychotic medication, Risperdal, and an antidepressant medication, Zoloft.[53] At the second hearing, held April 23, 2001, both doctors declared that Orange was not incompetent at the time of

---

[50]The record does not contain a transcript of this hearing. St. Rec. Vol. 1 of 6, Minutes of Lunacy Hearing, 10/29/96. *See also*, *State v. Orange*, 845 So. 2d 570 (La. App. 1st Cir. 2003); St. Rec. Vol. 5 of 6, 1st Cir. Opinion, 2002-KA-0711, 4/11/03.

[51]St. Rec. Vol. 1 of 6, Uniform Application for Post Conviction Relief, 7/27/00.

[52]St. Rec. Vol. 1 of 6, Hearing Minutes, 2/8/01.

[53]*State v. Orange*, 845 So. 2d at 570; St. Rec. Vol. 5 of 6, 1st Cir. Opinion, 2002-KA-0711, 4/11/03.

the crime, and he was able to understand the proceedings and assist his counsel.[54] After considering

the evidence, the Trial Court found Orange competent to stand trial.[55] The Court ordered that he

continue taking Risperdal and Zoloft pending the trial.

Several weeks later, the Court entertained the joint motion to confirm the medications and

dosages to be given to Orange, indicating that the prison physician had altered some of the

prescriptions.[56] Orange's counsel later filed a motion to for another mental examination based on

the alterations to the medication.[57]

Counsel alleged that, during the change in medication, he had difficulties in preparing for

trial due to Orange's mood swings, lack of attention, anger, and physical condition. After

considering counsel's arguments, and the documentation in the record, the Trial Court denied the

motion finding that it was not necessary to conduct another hearing on the issue of competency and

because the changes in medication would not affect Orange's ability to assist counsel and proceed

to trial.[58]

After voir dire on the day of trial, Orange's counsel requested a continuance and

reconsideration of the sanity hearing.[59] Counsel revisited his concerns with the seven-day period

during which Orange was taken-off of the antidepressant Zoloft and placed on a different

[54]St. Rec. Vol. 2 of 6, Lunacy Hearing Transcript, pp. 6-7, 14-15, 4/23/01; St. Rec. Vol. 1 of 6, Lunacy Hearing Minutes, 4/23/01.

[55]St. Rec. Vol. 2 of 6, Lunacy Hearing Transcript, p. 17, 4/23/01; St. Rec. Vol. 1 of 6, Lunacy Hearing Minutes, 4/23/01.

[56]St. Rec. Vol. 1 of 6, Joint Motion and Order to Medicate Defendant for Trial, 5/22/01; Trial Court Order, 5/23/01; Hearing Minutes, 5/23/01.

[57]St. Rec. Vol. 1 of 6, Motion to Order Mental Examination, 7/27/01.

[58]St. Rec. Vol. 2 of 6, Hearing Transcript, p. 10, 7/27/01.

[59]St. Rec. Vol. 1 of 6, Trial Minutes, 8/16/01.

antidepressant called Remeron.[60]  Counsel also complained that Orange's medications for stomach and back pains also had been discontinued.  He conceded, however, that Orange remained on the anti-psychotic drug, Risperdal.  Counsel also argued that, during that seven-day period, Orange was unable to assist him with the preparation of trial.  Counsel further conceded that, after that seven-day period, and for the two weeks just prior to trial, Orange's condition improved and he was able to assist counsel in preparing for trial.  Counsel also advised the Court that Orange would be able to assist at trial.

The Trial Court denied the motion for continuance.[61]  During the course of argument, the Court did not find that the change in medication affected Orange's competency to stand trial and found that there was no change in the anti-psychotic medication which was most significant to the defense.  The Court also noted that counsel indicated that Orange had quickly regained his ability to assist in trial preparation for at least ten days prior to the trial.

As outlined above, the law requires a new competency hearing to be held where the trial court receives information which, under an objective view, should reasonably have raised a bona fide doubt about the defendant's competency and alerted the court to the possibility that the defendant could neither understand the proceedings or appreciate their significance, nor rationally aid his attorney in his defense.  *Lokos*, 625 F.2d at 1261.  A review of the information before the Trial Court in this case does not present such a doubt.

First, at no time did any of the evidence demonstrate that Orange was not competent at the time of the crime, to assist counsel, or to proceed to trial.  Next, the record before the Trial Court

---

[60]St. Rec. Vol. 3 of 6, Trial Transcript, pp. 7-17, 8/16/01.

[61]St. Rec. Vol. 3 of 6, Trial Transcript, p. 17, 8/16/01.

demonstrated that Orange was not taken off of the anti-psychotic medication, which had been an important factor in the findings during the prior sanity hearings.  While his peripheral medications for pain and depression, were varied for a very short period of time, Orange in fact remained on another anti-depressant prescribed by the prison physician.  During that brief period, counsel indicated that he had some difficulty gaining preparatory assistance from Orange.  However, counsel was compelled to concede on the morning of trial that Orange was cooperative and able to assist him prior to that time and again after the medication was corrected.  Counsel had, and took advantage of, other opportunities prior to trial to consult with Orange.  Finally, counsel reiterated on the day of trial that Orange had always understood the proceedings against him and would be helpful during trial.

For the foregoing reasons, Orange has not demonstrated that the Trial Court violated *Pate* or was compelled by the evidence to conduct a third sanity hearing when his depression and pain medications were temporarily altered.  The factual findings of the state courts have sound basis in the record, and the denial of relief on this claim was not contrary to, or an unreasonable application of federal law.  Orange is not entitled to relief on this claim.

## VIII.   Denial of Motion to Obtain Funding (Claim No. 2)

Orange alleges that, on May 23, 1997, before he entered the plea of guilty, the Trial Court erroneously denied his counsel's request for the court to appoint a state-funded psychiatric expert to assist counsel.  He also alleges that the Court denied a similar request made by counsel after Orange was allowed to withdraw the guilty plea and was preparing for trial.  He alleges that the denial of these requests denied him the right to prepare a defense and properly place before the jury the issue of his mental illness at the time of the crime through use of expert psychiatric testimony.

The State argues that Orange and his counsel had sufficient information available through the two sanity commissions and the testimony and reports of the doctors to place the issue of his mental health before the jury.

This issue was first raised by Orange, *pro se*, on direct appeal to the Louisiana First Circuit. The Court denied relief finding that Orange was allowed sufficient access to the appointed commission psychiatrists and the examinations were appropriately completed. The Louisiana Supreme Court denied Orange's subsequent writ application without reasons. *See Ylst*, 501 U.S. at 802.

In *Ake v. Oklahoma*, 470 U.S. 68 (1985), relied on by petitioner, the United State Supreme Court held that "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." *Ake*, 470 U.S. at 83. However, an indigent defendant does not have an automatic right to expert assistance upon demand. *Yohey v. Collins*, 985 F.2d 222, 227 (5th Cir. 1993). Rather, he must "establish a reasonable probability that the requested experts would have been of assistance to the defense and that denial of such expert assistance resulted in a fundamentally unfair trial." *Id.*; *Griffith v. Quarterman*, 2006 WL 2041291 at *5 (5th Cir. Jul. 21, 2006); *see also*, *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

In this case, Orange suggests that he should have received funding to hire an independent psychiatrist to aid in his defense and to provide another mental examination if necessary. Orange does not indicate exactly how another psychiatrist would have aided in his ability to present his

defense.  Furthermore, the *Ake* court specifically held that a defendant is <u>not</u> entitled "to choose a psychiatrist of his personal liking or to receive funds to hire his own."  *Ake*, 470 U.S. at 83.

Instead, the Court determined that the indigent defendant only has the right to have access to a competent psychiatrist.  *Id.*  As pointed out by the State, Orange was given this access by means of the psychiatrists forming the two sanity commissions.  The fact that Orange may have disagreed with their resolve that he was competent at the time of the crime and competent to proceed did not create a cognizable habeas corpus issue under *Ake*.  *See Sidebottom v. Delo*, 46 F.3d 744, 753 (8th Cir. 1995).

Thus, it is not enough for Orange to suggest that he was somehow entitled to access to his own psychiatrist or mental evaluation.  As noted above, *Ake* does not provide such a right.  Instead, Orange is required to establish a reasonable probability that another psychiatrist would have aided the defense and that the lack of one rendered his trial unfair.  Here, he has not met that burden, nor did he do so in the state courts.  The record demonstrates that there was nothing compelling before the Trial Court at anytime which would have entitled Orange to the assistance of another psychiatrist or expert to assist in his defense.

The denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  Orange is not entitled to relief on this claim.

## IX.   <u>Vindictive Prosecution and Sentence (Claim No. 3)</u>

Orange alleges that the Trial Court acted vindictively as demonstrated by several actions taking by the judge: (1) the bond was increased after withdrawal of the guilty plea; (2) the judge proceeded to trial after the prison personnel altered his medication; (3) the judge denied counsel's request for a third sanity evaluation after the change; (4) the judge allowed the case to proceed

without funding for an independent psychiatrist; and (5) the 75 year sentence imposed was more severe than the 40 year sentence imposed after the original guilty plea.

The State argues that this claim is without merit for the reasons assigned above regarding the altered medication and the funding for an independent psychiatrist.  In addition, the claim is without merit because the 75 year sentence was less than the court could have imposed under the habitual offender statute.

Orange raised this claim in the second direct appeal after his re-sentencing.  The Louisiana First Circuit denied relief finding the claim to be meritless.  The Court noted that the issues arising from the altered medication and the denial of a third sanity hearing were resolved and no error was found on the part of the Trial Court.  The Court also recognized that the law cited by Orange was directed to prosecutorial (not judicial) vindictiveness, something not alleged or shown.  The Court resolved that Orange had failed to establish any factual or legal basis to find vindictiveness by the trial judge.  The Louisiana Supreme Court denied Orange's subsequent writ application without reasons.  *See Ylst*, 501 U.S. at 802.

According to the United States Fifth Circuit, judicial bias is a difficult claim to sustain under AEDPA.  *Buntion v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008).  The Supreme Court's case law on judicial bias has "acknowledge[d] that what degree or kind of interest is sufficient to disqualify a judge from sitting 'cannot be defined with precision.'"  *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 822 (1986) (quoting *In re Murchison*, 349 U.S. 133, 136 (1955)); *see also Ryan v. Clarke*, 387 F.3d 785, 793-94 (8th Cir. 2004) ("Application of this vague standard, when viewed through the deferential lens of *Williams v. Taylor* and the AEDPA, necessarily leaves state courts

considerable latitude to pronounce rulings that do not contradict, and are reasonable applications of, [relevant Supreme Court precedent]").

Generally, the Supreme Court has recognized two kinds of judicial bias: actual bias and presumptive bias. *See e.g.*, *Withrow v. Larkin*, 421 U.S. 35, 47 (1975) ("[V]arious situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable."); *Bigby v. Dretke*, 402 F.3d 551, 560 (5th Cir. 2005) (evaluating a judicial bias claim and noting that because there was no presumption of bias from the defendant's attack on the judge, it was necessary to "examine the record for indications of actual bias on the part of the trial judge").

There are three situations in which the Supreme Court has found presumptive bias: (1) the decision maker has a direct personal, substantial, and pecuniary interest in the outcome of the case; (2) an adjudicator has been the target of personal abuse or criticism from the party before him; and (3) a judicial or quasi judicial decision maker has the dual role of investigating and adjudicating disputes and complaints. *Buntion*, 524 F.3d at 672 (citing *Bigby*, 402 F.3d at 559). In this case, Orange has not alleged any of these presumptive factors to have played a role in the Trial Court, and none are obvious from the record.

Instead, Orange alleges that the adverse rulings made by the trial judge, and the sentence he imposed, demonstrate his vindictiveness towards him and denied him a fair trial. Orange, therefore, apparently argues, under a broad reading, that the trial judge engaged in acts of actual bias based on the rulings made. In cases where the defendant is alleging actual bias, opinions formed based on the facts at trial are rarely a basis for recusal unless they show a deep-seated, extreme favoritism or antagonism. *Liteky v. United States*, 510 U.S. 540, 555 (1994).

32

The Supreme Court has stated, however, that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555; *Reese v. Cain*, 265 Fed. Appx. 230 (5th Cir. Feb. 7, 2008) (citing *Bigby*, 402 F.3d at 563); *see also Andrade v. Chojnacki*, 338 F.3d 448, 455 (5th Cir.2003); *Watson v. U.S. ex rel. Lerma*, 2008 WL 2725506 (5th Cir. Jul. 14, 2008). Judicial opinions will only support an actual bias claim if they reveal favoritism or antagonism such that fair judgment is impossible. *Id.*, 510 U.S. at 555; *see also Berger v. United States*, 255 U.S. 22, 28 (1921).

On habeas review, for Orange to show a due process violation and obtain habeas relief, he must demonstrate that the state court unreasonably determined that the trial judge was not actually biased in his case, based on clearly established Supreme Court law. However, the analysis of judicial bias expounded by the Supreme Court in *Liteky*, as set forth above, relies exclusively on statutory law on recusal and neither case mentions the Due Process Clause. *Buntion*, 524 F.3d 673-74. As a result, after thorough review of existing precedent, the United States Fifth Circuit has resolved that neither case constitutes clearly established Supreme Court precedent on the issue of judicial antagonism as it relates to due process. *Id.* In other words, there exists no clear Supreme Court precedent addressing actual bias in terms of a due process violation. *Id.* at 674.

However, under the precedent available, Orange has failed to establish actual bias or vindictiveness, as he calls it, on the part of the state trial court. The record demonstrates that the decisions reached by the state trial and appellate courts were factually and legally sound, and were not contrary to Supreme Court precedent.

That is, Orange has not shown that the Trial Court's denial of the request for funding or for a third sanity hearing were erroneous, legally or factually. Therefore, this Court has no basis to find that the Trial Court's decisions were antagonistic or showed impermissible favoritism.

Furthermore, Orange alleges that the pretrial increase in his detention bond, after withdrawal of the guilty plea, and the 75 year sentence, compared to the 40 year sentence, demonstrate the animosity of the Trial Court towards him. Orange did not exhaust the issue of the alleged excessiveness of his sentence[62] nor did he ever challenge his bond as excessive. Instead, he summarily argues that the mere increase in bond and the higher sentence after trial are indicative of vindictiveness.

In briefly addressing the issue of the higher sentence and that of the increased bond, as relates to judicial vindictiveness, the Louisiana First Circuit found Orange's claim was not supported by the record. Similarly, Orange has not here demonstrated that the Trial Court acted outside of its discretionary powers or the state statutory confines in imposing the bail or the sentence. In addition, Orange has not demonstrated any animosity or bias supporting the court's decisions to set the bond or to impose the sentence or that either act was based on matters outside the proceedings or denied him a fair trial. *See Liteky*, 510 U.S. at 556. His claims are conclusory.

Nevertheless, after thorough review of the record, Orange has not established either actual or presumptive judicial bias as defined by the United States Supreme Court. The denial of relief on this claim was neither contrary to nor an unreasonable application of Supreme Court precedent. He is not entitled to relief on this claim.

---

[62]Orange raised this issue in a *pro se* appeal, 2003-KA-2172. On May 14, 2004, the Louisiana First Circuit affirmed the sentence finding the claims raised, including excessiveness, the be without merit. Orange did not pursue the claims in the Louisiana Supreme Court.

## X.     Ineffective Assistance of Counsel (Claim No. 4(a) and (b))[63]

Orange alleges that his counsel was rendered ineffective because (a) he allowed Orange to be tried without clarification of his competence and failed to utilize available substantive protections, and (b) he failed to secure the assistance of an independent psychiatric expert to conduct examination and assist in the defense.  The State simply argues that the claims are without merit.

Orange raised these claims on post conviction after his jury trial.  As discussed thoroughly above, the Trial Court denied the claims citing La. Code Crim. P. art. 930.4.  Orange's first application to the Louisiana First Circuit was denied for his failure to comply with the court rules for filing, La. App. R. 2-18.7 and 4-9.  Orange's second writ application and his subsequent writ application to the Louisiana Supreme Court were denied without reasons.    *See Ylst*, 501 U.S. at 802.

The standard for evaluating counsel's performance is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), in which the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom.  *See Strickland*, 466 U.S. at 697.  To meet the burden of proving ineffective assistance of counsel, petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000), *cert. denied*, 531 U.S. 1167 (2001).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002).  "The defendant must show

---

[63]The third facet of Orange's ineffective assistance of counsel claim is to be dismissed as procedurally defaulted.

that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all of the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart*, 506 U.S. at 371 (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999). Furthermore, "[t]o meet the prejudice prong, the [petitioner] must affirmatively prove, and not merely allege, prejudice." *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Theriot v. Whitley*, 18 F.3d 311, 314-15 (5th Cir. 1994). In this context, a reasonable probability of prejudice is "a probability sufficient to undermine confidence in the outcome." *Id*. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Kimler*, 167 F.3d at 893. On habeas review, scrutiny of counsel's performance "must be highly deferential" and the court will "indulge a strong presumption

36

that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 689-90); *Mattheson*, 751 F.2d at 1441.

A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' But it is not enough, under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting *Strickland*, 466 U.S. at 693). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir.) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)), *cert. denied*, 531 U.S. 849 (2000) .

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must determine whether the state court's failure to grant relief was contrary to, or an unreasonable application of, *Strickland*.

The Court has already engaged in a detailed discussion of Orange's claims regarding the Trial Court's denial of his request for funds for an independent psychiatrist and denial of the request for another psychiatric evaluation after the change in his medication. The Court has resolved, as did the state courts, that Orange was not entitled to either the funding or the third psychiatric evaluation under Supreme Court precedent. It was the law, and not counsel's error, that compelled the state courts' to deny relief on these claims.

Furthermore, Orange's claims are belied by his own allegations. First, Orange concedes that his prior counsel requested on May 23, 1997, that the Trial Court appoint and provide funding for

a psychiatrist to assist the defense.  The Trial Court denied the motion.  A similar request, according to Orange, was denied again after he was allowed to withdraw his guilty plea.

Orange therefore recognizes that his counsel in fact made efforts to obtain an independent expert to no avail.  No reasonable standard would find his trial counsel deficient in failing to re-urge a motion which was twice found meritless, especially where the record does not indicate any change in Orange's defense, or mental condition, to warrant another motion.

In addition, Orange also recognizes in his briefs that his trial counsel made at least two attempts to have the sanity commission re-opened, or a new mental examination conducted, after the prison officials altered Orange's peripheral medication.  It was counsel who brought these matters to the Trial Court's attention.  It was counsel who also sought correction of the medication to assure Orange's constitutional rights were protected.

Nevertheless, for the reasons assigned above, and in spite of counsel's efforts, the record did not support a basis for a new psychiatric hearing under *Pate* or funding under *Ake*.  Counsel's action are not deficient, or prejudicial, simply because he is unsuccessful in his efforts to obtain relief from the court.  *See Martinez v. Dretke*, 99 Fed. Appx. 538, 543 (5th Cir. 2004).  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."  *Strickland*, 466 U.S. at 689 (citations omitted).

Orange has failed to demonstrate that counsel was ineffective or that his actions were prejudicial under the standards set forth in *Strickland*.  The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  Orange is not entitled to relief on this claim.

## XI.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Vernon L. Orange, Sr.'s petition for issuance of a Writ of Habeas Corpus filed pursuant to Title 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within ten (10) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 29th day of August, 2008.

_____

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**